No. 35,882

ELIZABETH ENSCH, *Appellee,* v. MARY A. ENSCH, *Appellant,* and GRAND LODGE OF ANCIENT ORDER OF UNITED WORKMEN OF THE STATE OF KANSAS, *Defendant.*

(138 P. 2d 491)

Opinion filed June 12, 1943.

*Aubrey Neale,* of Coffeyville, argued the cause for the appellant.

*A. R. Lamb,* of Coffeyville, argued the cause, and *Dallas W. Knapp,* of Coffeyville, was on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal from an order committing defendant for contempt of court and from the judgment fixing the terms under which she might purge herself of the contempt.

The suit in which the contempt proceedings are involved was brought to obtain a decree directing defendant to specifically perform an alleged oral contract whereby she had agreed to make plaintiff the beneficiary in a certain life insurance policy and to make available to plaintiff the cash surrender value thereof. The defend-

ant insurance company is not a party to the appeal, the controversy being entirely between the plaintiff, Elizabeth Ensch, and the defendant, Mary A. Ensch, plaintiff's mother-in-law. No oral testimony was introduced. The narrative culminating in the order of contempt is disclosed by the pleadings, stipulation, decree of specific performance and by a subsequent accusation of contempt and an answer thereto.

The petition in the original suit for specific performance in substance alleged:

Plaintiff, Elizabeth Ensch, is the surviving widow and sole heir of her husband, Leo J. Ensch, Jr., who died intestate January 1, 1940; no administration has been had on his estate; on May 6, 1920, the defendant, Grand Lodge of Ancient Order of United Workmen, executed and delivered to the defendant, Mary A. Ensch, a twenty payment life plan beneficiary certificate, No. 8463, upon her life in the sum of $2,000, and that Leo J. Ensch, Jr., her son, was named beneficiary therein (copy of policy was attached to the petition); the annual premiums thereon were $74.44 and if the premiums were paid annually for twenty years the policy became a paid-up policy for the sum of $2,000; sometime prior to 1925 the defendant, Mary A. Ensch, was unable to pay the premiums, and her son, Leo, thereafter paid the same until November 29, 1930, at which time plaintiff married Leo, the son; from the date of the marriage plaintiff and Leo paid all premiums on the policy under an oral agreement with defendant, Mary A. Ensch, that the certificate should remain in the joint custody and control of the plaintiff and her husband, or the survivor, and that Mary A. Ensch would not change the beneficiary and would not accept the cash surrender value, or loan value, except with the consent of plaintiff and her husband, and that the proceeds should become the property of plaintiff and her husband, or the survivor of them; the certificate was delivered to plaintiff and her husband and they made payments thereon until January 1, 1940, when Leo died; immediately after Leo's death, Mary A. Ensch orally agreed with plaintiff if plaintiff would retain the certificate and continue to pay the premiums thereon, the defendant would make application to change the name of the beneficiary to the plaintiff or at plaintiff's option would obtain for her the cash surrender value of the policy and that defendant would so advise the insurance company and execute the necessary papers to consummate the agreement; plaintiff paid the premiums for January and February

of 1940; plaintiff also sent a check covering the premiums for the months of March and April of 1940, but the check was returned by the insurer with the advice defendant had paid the premiums for the months of March and April; plaintiff thereupon demanded that defendant make application for plaintiff's benefit for the cash surrender value which. was then in excess of $1,300; defendant refused to make such application.

Plaintiff prayed for a decree of specific performance of the oral contract in order that she might be enabled to obtain the cash surrender value of the certificate as of March 1, 1940.

Two days after instituting the instant suit (No. 2189), plaintiff filed another suit (No. 2190) against the defendant, Mary A. Ensch, and the American Mutual Life Insurance Company of Des Moines, Iowa, which suit was upon two policies on the life of the defendant, Mary A. Ensch, with that company, both of such policies being in the face amount of $1,000. In both petitions it was alleged that Leo J. Ensch, Jr., son of Mary A. Ensch, was named as beneficiary in the policies. The same allegations were made in the second suit relative to the payment of premiums by the son and concerning the later agreement with the plaintiff as were contained in the instant suit upon which this appeal is based. General demurrers were filed by the defendant to the petitions in each case and were overruled. No question is now presented concerning the ruling on the demurrers.

To the petition in the instant case (No. 2189) defendant on June 16, 1941, filed an answer in which she in substance alleged:

After the death of defendant's husband in 1927, she advised her son, Leo J. Ensch, Jr., she could not pay the premiums on the policy and that her son paid them until the date of his death (1940); immediately following her son's death plaintiff represented she had no money with which to defray her living expenses and the expenses incurred by the death of her husband (Leo) and requested that defendant raise some money for her on the certificates of insurance on defendant's life in which certificates her son, Leo J. Ensch, Jr., was named beneficiary and that by reason of such representations the defendant signed a letter prepared by plaintiff to raise money on the certificates; when the body of her son arrived in Coffeyville for burial, she was informed that her son carried a life insurance policy in the sum of $1,000 in the Knights of Columbus Council No. 991 of Coffeyville, Kansas, in which she, Mary A. Ensch, was

named as beneficiary; upon the request of plaintiff, defendant endorsed the check for $1,000 to the plaintiff.

Defendant's answer denied she had made the contract alleged by plaintiff. A similar answer was filed in case No. 2190. Plaintiff's reply, in both cases, admitted the letter pleaded in the answer was signed by defendant, Mary A. Ensch, and that it was mailed to the insurance company but alleged such letter was in compliance with the agreement alleged by plaintiff. In the reply plaintiff also admitted that her husband (Leo) carried the $1,000 Knights of Columbus policy as alleged in the defendant's answer but stated such policy was paid to plaintiff as the surviving widow of Leo J. Ensch, Jr. As to other matters alleged in the answer the reply contained a general denial.

While these actions were pending and on November 17, 1941, the parties entered into a contract and stipulation for a full and complete settlement of both suits. The stipulation was approved and the court on December 1, 1941, rendered judgment in each of the suits pursuant to the agreed settlement. Defendant obtained the cash surrender value of the two policies involved in the second suit (No. 2190) and paid the amounts into court pursuant to the decree. The money from those policies was disbursed according to the decree and no question concerning that part of the stipulation and decree is involved in the instant appeal. The controversy involves the alleged willful and contemptuous failure of defendant to comply with the decree of specific performance in the first suit.

On October 6, 1942, plaintiff filed an accusation of contempt against the defendant setting forth pertinent provisions of the decree and the alleged violation thereof. The provisions of the decree of December 1, 1941, embodied in the accusation, were as follows:

"1. That the agreement between the parties as above set forth be specifically performed.

"2. That the defendant, Mary A. Ensch, be and she hereby is ordered to make, execute and deliver all instruments in writing which may be necessary so that the plaintiff, Elizabeth Ensch, may be named the sole beneficiary in one certain 20-payment Life Plan, Beneficiary Certificate No. 8463, of the Grand Lodge of Ancient Order of United Workmen of the State of Kansas, upon the life of Mary A. Ensch, in the sum of $2,000 now fully paid up, and deliver the same if and when received to Elizabeth Ensch.

"3. That the name of Elizabeth Ensch, as beneficiary, shall not be changed to any other person by Mary A. Ensch, the insured.

"4. That jurisdiction of this cause is hereby retained by the court for the purpose of seeing that this order is carried out."

Paragraph (3) of the stipulation, which was embodied in the decree, reads:

"Second party (defendant) further promises and agrees, that should first party (plaintiff) at any time hereafter, desire the cash loan value on said certificate, then second party will upon receipt of written notice thereof, make, execute and deliver such written instruments as may be necessary to obtain the same, as of that date, and when obtained, then pay the same to party of the first part."

The accusation further in substance alleged:

It was represented to plaintiff by the defendant acting by and through her attorney, F. B. Hanlon, at the time the matters and things were settled, compromised and adjusted, and at the time judgment was rendered that certificate No. 8463 was fully paid up and that it was free and clear of all indebtedness and charges of every kind and character and had a cash surrender value in the sum of $1,324; upon the representations so made plaintiff relied, and parted with her cause of action in the instant case, and also in case No. 2190; later plaintiff discovered that Mary A. Ensch had an indebtedness against said certificate in the sum of $1,332.74 and that the certificate was about to be canceled because said indebtedness exceeded the reserve, and as a matter of fact the certificate had no value at all; the defendant knowingly, willfully and contemptuously failed to pay off said indebtedness so that the policy could be delivered to plaintiff pursuant to the order of the court; at the time the judgment for specific performance was rendered the policy was assigned and pledged to the Ancient Order of United Workmen of the State of Kansas for the loan defendant had obtained thereon and defendant had concealed such assignment and pledge for the purpose of practicing a fraud on the plaintiff; by reason of the failure of the defendant to obey the order of the court the authority of the court with respect to such order had been impaired and plaintiff had been put to inconvenience and expense as follows:

"June 23, 1942, cash paid A. O. U. W. for an assessment on said certificate ........................................................ $5.01
July 9, 1942, cash paid A. O. U. W. to obtain release of the assignment made by Mary A. Ensch................................. 1,332.72"

The accusation further alleged that in addition to the above expenditures plaintiff had been compelled to employ counsel to prosecute the contempt proceedings and to protect the dignity of the court and the rights of the plaintiff. The prayer asked that defendant be adjudged guilty of indirect contempt and be punished by

fine or imprisonment and be ordered to pay into court for the plaintiff the costs, expenses and damages to which plaintiff had been put in the premises.

In response to a citation to defendant to show cause why she should not be punished for contempt for failure to comply with the decree defendant admitted the provisions of the decree pleaded in the accusation and in substance alleged:

For a long time prior to the filing of the petition plaintiff's attorney, Dallas W. Knapp, was advised defendant had secured a loan on certificate No. 8463; defendant executed and delivered all necessary instruments to have plaintiff named as sole beneficiary in said certificate and when that was done the policy was delivered to plaintiff or to her attorney, Dallas W. Knapp.

The answer contained a general denial of all other matters contained in the accusation which were not admitted and a specific denial the defendant had advised plaintiff the certificate was free and clear of all encumbrances and that it had a cash surrender value of $1,324.

In view of the allegations contained in the accusation and answer with respect to representations alleged to have been made by the attorneys concerning the loan, counsel who originally represented plaintiff and defendant did not participate in the contempt proceedings. Thereafter, A. R. Lamb represented the plaintiff and Aubrey Neale represented the defendant. When the contempt proceedings came on for hearing the court reëxamined the stipulation and decree and concluded the decree should be construed to mean that defendant was required to deliver the certificate fully paid up and free from liens. Pursuant to that interpretation of the decree the court placed upon defendant the burden of showing she had not and was not knowingly and contemptuously violating and disobeying the order and judgment of the court in her failure and refusal to deliver to plaintiff the certificate for $2,000 fully paid up and free from lien. Defendant demurred orally on the ground the court was without jurisdiction to hear or rule on the accusation of contempt. The demurrer was overruled and defendant refused to introduce any testimony. The court made findings and rendered judgment as follows:

"1. That in its order dated December 1, 1941, this court retained jurisdiction of this cause for the purpose of seeing that its order was carried out.

"2. That by reason of the failure of the defendant, Mary A. Ensch, to deliver to plaintiff said Certificate as provided by the order of this court, that

plaintiff has been required to pay the total sum of $1,337.75 in order to pay off the lien and assessment thereon so as to keep said policy in force, and that plaintiff is entitled to judgment for said sum against the defendant, Mary A. Ensch.

"3. That Mary A. Ensch is in contempt of court in that she knowingly, fraudulently and willfully refuses to obey and comply with the order of this court dated December 1, 1941, whereby she was ordered and directed to turn over and deliver to Elizabeth Ensch one certain 20-payment Life Plan Beneficiary Certificate No. 8463 on the life of Mary A. Ensch issued by said Grand Lodge in the sum of $2,000 fully paid up and free from liens.

"4. That said violation consisted in Mary A. Ensch's failure and refusal to turn over and deliver said certificate fully paid up and free from liens.

"5. That said violation was done knowingly, willfully and contemptuously.

"It is, therefore, by the court ordered, considered, adjudged and decreed:

"1. That Mary A. Ensch is guilty of contempt. That Mary A. Ensch may purge herself of said contempt by paying to the clerk of this court within thirty days the sum of $1,337.75, with interest at 6% from July 9, 1942, for the benefit of plaintiff and the costs of this action taxed in the sum of $21.50, and unless said sum be paid that the said Mary A. Ensch be committed to the county jail of Montgomery county, Kansas, until she be discharged according to law.

"2. It is by the court further ordered, adjudged and decreed:

"That plaintiff have and recover judgment against the defendant, Mary A. Ensch, for the sum of $1,337.75, with interest at six percent from July 9, 1942, and for the costs of this action taxed in the sum of $21.50."

Defendant has appealed from the order overruling her demurrer and from the above findings and judgment. We shall continue to refer to the parties as plaintiff and defendant. Defendant argues her specifications of error under four headings. Touching the contention the court was without jurisdiction it is sufficient to say the court manifestly had jurisdiction to hear and determine the merits of the accusation. Having such jurisdiction it possessed power and authority to make some order, right or wrong, respecting the contempt charge. In view of the conclusion we have reached with respect to a fundamental question, namely, the proper interpretation of the decree of December 1, 1941, it is unnecessary to decide various other alleged errors.

The court, of course, had jurisdiction to examine and interpret its former decree. Did the decree require defendant to deliver the certificate to plaintiff free and clear of liens? Neither the stipulation of the parties nor the decree made pursuant thereto expressly so provided. Plaintiff strenuously insists it was the intent of the stipulation and decree to so provide. Defendant just as vigorously

argues such was not the intent of the stipulation or decree. The record discloses the trial court realized, and stated, that whether the certificate was required to be delivered free and clear of liens should have been determined more definitely by the parties in their own stipulation of settlement but that, in view of the terms of the decree agreed upon by the parties, the presumption was the certificate was to be delivered free from liens.

The stipulation of the parties was embodied in and made a part of the decree. In support of plaintiff's contention she emphasizes particularly paragraph (3) of the stipulation to which we previously referred in the accusation of contempt. A careful analysis of that paragraph does not, in our opinion, justify the court's interpretation the certificate was required to be free from a loan. We think the paragraph is clearly open to the interpretation the certificate was not required to be free from liens. It, in substance, merely provided that if the first party (plaintiff) desired the cash loan value on the certificate at any time and made demand on the second party (defendant) for it, in the manner in that paragraph provided, that the second party agreed to execute such instruments as might be necessary to obtain the cash surrender value which the certificate had *as of that date;* that is, on the date of the demand. The actual cash surrender value of the certificate at any given date would be its total cash surrender value, according to the contract schedule of the certificate, minus whatever loan might then exist against it. If the parties intended the certificate should be and at all times remain free from loans, they should have so stipulated. They did not do so and the trial court did not so decree.

Plaintiff argues her petition in the suit for specific performance definitely alleged she and defendant had agreed defendant would make her the beneficiary of the policy and that defendant would not accept the cash surrender or loan value without plaintiff's consent. The petition did so allege but defendant's answer expressly denied such a contract had ever been made. The parties undertook to settle all their differences by their own agreement in writing and by a decree of court rendered in conformity therewith. It was not the alleged contract which plaintiff pleaded in her action for specific performance but the stipulated agreement in settlement of that suit which the court decreed defendant should perform.

While it is the interpretation of the decree in the instant case which is controlling, it is of interest to notice that the decree in

settlement of the other case involving the two certificates with the American Mutual Life Insurance Company expressly provided defendant was required to take such action as was necessary to obtain the *total* cash withdrawal or loan value upon those two certificates.

In 17 C. J. S., Contempt, § 12, p. 16, the well-established rule is stated as follows:

"A decree or order will not be expanded by implication in contempt proceedings, beyond the meaning of its terms when read in the light of the issues and the purpose for which the suit was brought, and the facts found must constitute a plain violation of the decree or order so read. To justify adjudging one guilty of contempt for the alleged violation of an order, the order must be so clearly expressed that when applied to the act complained of it will appear with reasonable certainty that it has been violated. Hence, a party cannot be punished for contempt for failure to obey an order which is contradictory, or for failing to do something not specified in the order, or for doing something not forbidden by the order, nor should a party be punished for disobedience of an order which is capable of a construction consistent with innocence." (See cases cited in notes in support of rule.)

In *Macleay Estate Co. v. Bailey*, 132 Ore. 350, 285 Pac. 809, it was held:

"To justify court in adjudging one guilty of civil contempt for alleged violation of order, act complained of must be so clearly defined that it will appear with reasonable certainty that order has been violated. . . . (Syl. ¶ 1.)

"Where language of decree is indefinite, court should not make finding of contempt against defendant for violation thereof until minds are reasonably satisfied that defendant as person of ordinary intelligence knew that conduct violated language of decree." ( Syl. ¶ 4.)

To the same effect is *In re Miller & Harbaugh*, 54 F. 2d 612, where the rule was stated thus:

"Thing required to be done by order in civil litigation, to authorize contempt proceeding, must be clearly defined." (Syl. ¶ 3.)

In *North v. Foley*, 267 N. Y. S. 572, it was said:

"The rule is well settled that, before one can be punished for contempt in not complying with a direction of the court, the particular or precise thing to be done by the party proceeded against must be clearly and definitely stated." (p. 574.)

In the North case it was also held:

"Party should not be punished for contempt for disobeying order, if order is capable of construction consistent with innocence." (Syl. ¶ 4.)

We think the trial court erred when it interpreted the decree to mean the certificate was required to be free and clear of liens. In any event, however, the decree was not sufficiently definite and cer-

tain in that respect to authorize or justify contempt proceedings. It follows the finding and order of contempt cannot stand. The judgment is reversed and the cause remanded with directions to vacate and set aside the finding and order of contempt and the judgment rendered in the contempt proceedings.

THIELE, J., dissents.